Please all rise. Hear ye, hear ye. This Honorable Appellate Court of the Second Judicial District is now in session. The Honorable Robert E. McLaren presiding. Please be seated. Your Honors, this case on the docket is 2-21-0642. The people of the State of Illinois plaintiff appellee v. Alex Medina, defendant appellant. Arguing on behalf of the appellant, Mr. Anthony J. Santelli. Arguing on behalf of the appellee, Ms. Victoria E. Joseph. Thank you. Mr. Santelli, you may proceed. Ms. Joseph, on my right is Justice Shostak. On my left is Justice Burkett. Thank you. We've never been confused, so. You were never wrong, either. You were always right. You may proceed. Good morning, Your Honors. Good morning to opposing counsel, and may it please the Court. My name is Anthony J. Santelli, and I represent Alex Medina in today's case. The issue presented is sufficiency of the evidence. Specifically, the defense admits that the trial court did not make a reasonable inference that Medina's statements in two post-arrest phone calls from jail supported a finding that Medina possessed cocaine. Mr. Santelli, even absent the telephone conversations in the jail, the brick of cocaine was located in plain view on the floor right in front of the defendant, right? That is incorrect, Your Honor. The cocaine was not in plain view. It was wrapped up in tape instead of a black plastic bag. This Court has distinguished in the Ingram case between instances of plain view, such as a gun lying on the floor, versus contraband that would be in a bag under a seat or in a bag in the glove compartment. When the individual entered the car, where did he enter? From the record, the driver of the Durango entered from the passenger seat behind the driver's side passenger seat. And who was in the back seat? Medina was in the rear side passenger seat. How was it? At minimum, don't we have constructive possession? No, because for constructive possession, you would need knowledge and intent to control. And I don't think either of those are present in this case. First, as to knowledge, this Court should keep in mind that Agent Campman, the Homeland Security agent in charge, when he saw the bag being brought into the car, said that it was either, from his experience, narcotics or money. And that's at 418 on the record. If Agent Campman couldn't identify the bag at that time, I don't think this Court should be able, or should impute that Medina would be able to know exactly what was in that bag when it came in. There were surveillance officers that watched the SUV pull up, and then they moved from the Jackson address a couple blocks, and they see the individual get out, gets in the back seat where the defendant is, correct? That's correct. And when that person gets out, he no longer has the bag, or the bag is not in view of the officers that are watching. And then the car is later pulled over, and the bag is underneath the defendant's feet, in the back seat, right? That's correct, but I don't think that it's more, excuse me, I think any of the four people in the car could equally have been handling that bag. It's not more probative that Medina was in the back seat than it ended up at his feet. Well, it doesn't have to be actual possession. It can be constructive, right? So if everybody else had knowledge of it, including him, it could be constructive. If there was an instance of joint possession, but we submit that there is not any possession on the part of Medina, as to, just to finish my thought on knowledge, if you look at the factors that the Illinois courts have decided to suggest an inference of knowledge, as to visibility, there's no fingerprints on this bag. There's no direct evidence Medina looked into it. This court should keep in mind it was 5.30 p.m. on December 19th. Officers testified it was dark out. There was no gestures or movements. Both officers, Linley and Patachick, said there were no furtive movements. As to time, Linley said this could have been 20 minutes, but I think this court should keep in mind that the car went directly to Donner Place and didn't stop. Let me ask you this. Sure. The trial court placed a lot of weight on the jailhouse conversations, correct? Right. The trial court inferred that, and I quote, the defendant attempted to control the information about their activities and directing their movements of the vehicle before the stop. In other words, he inferred that the defendant was in control. He was in charge. Why is that inference, why can't we, or why should we not credit that inference that the judge made? Because that inference does not rest on a factual antecedent. The court was starting from the place that Medina made those phone calls, or made those statements in the jailhouse. Well, he was in possession of the phone, the flip phone, that had the address for where the meeting took place. The defense disagrees he was in possession of that phone. The testimony was that all three phones. But you're asking us to re-weigh the evidence. The judge made a finding that he was in possession of that phone for at least some period of time, and it had the address. It directed whoever was the holder of that 708 number to the address where the meetings took place. But the trial court also concluded that the phone was only thinly connected to the defendant, and it would not support a finding of possession absent the jail phone calls. And I think that just to respond to — Go ahead. I'm sorry. I just wanted to respond to a point that the State had made in its brief comparing actual possession to the Illinois Supreme Court case Cregan, where it said because the defendant was touching the phone, he was in actual possession. If this court reads the Cregan case, that has to do more with items that are immediately associated with a person, such as a backpack or a purse or a bag, that can be searched incident to arrest. That's different from this situation where the officers all agreed they never established who actually owned that phone. And I think this court should keep in mind that that phone was not tested for DNA, and it should have been. The probative value of that phone is that it was a flip phone. If it was sent in for DNA, fingerprints or DNA could have been taken from the inside of the phone. That wasn't done. So just because Medina's hand is hovering over the phone, potentially touching it, I don't think really shows that he had possession, or at least it only thinly connects, as the court said. And this court would not be reweighing the evidence because the trial court said that that is not sufficient for a conviction here. It did hinge on the jail phone calls, which do not have a factual antecedent. Let me ask you this. You say in your brief that the trial court misunderstood what Mr. Medina was saying in those phone conversations, essentially, correct? I do think that they are, when read in a different, when read in the proper context, they have a different meaning. They may have been talking about something else and not this particular transaction, right? Maybe they were talking about something else. But let me ask you this. In the phone call, Medina says, I've got court on the 4th now. My lawyer got it on the 4th. So that's the subject matter of what the conversation is, what he's been arrested for. And lo and behold, as it turns out, the case was not scheduled for the 4th. It was scheduled for the next day, but defendant's lawyer motioned it up for the 4th. So can't we infer from that that the rest of the conversation was about the activities that led to his arrest and the charges that he was facing? No, because there's a distinction between the subject matter of the conversation and the actual factual antecedent of what the inference is based on. The subject matter of the conversation, we're having the conversation about what happened in the car right now. That's what the subject matter of the conversation is. The inference that he possessed the cocaine needed to be based on a factual antecedent, something that would have been able to be drawn from the phone calls of what he was talking about. He says in the conversation, he basically is calling these two idiots because he told them not to say anything to the police. Well, Your Honor, I have two points of response to that. And the first is that the direct quote is, I said before you left not to say anything. Before you left is not indicative of something that someone would say before a car was about to be in traffic stop. Once again, you're asking us to make inferences that are inconsistent with the findings of the trial court. And we don't do that. Your Honor, I'm saying that the trial court already made those inferences. And if you can't do it, then the trial court shouldn't have been able to do that either. That inference didn't rest on a factual antecedent of a temporal basis of when the statement was made or whether it was a direction. The court is saying, oh, this statement was made before the traffic stop occurred and it was a direction. The fact that it's saying it was a direction is based on its inference that it happened before the traffic stop occurred. It's based on an inference that related to the cocaine, despite the fact that Medina also said he had entered the car and tended to smoke marijuana. And just to respond also to a point on the jail phone calls and putting them in the proper context, if you look at the transcript of the December 21st call, Medina appears to realize in real time that he is going to be charged with this offense because Flores tells him that Flores had been released and that Trujillo had just been given a ticket. And so he is upset and he is saying these things. But, A, it's not clear that there's any conflict between what they were saying. B, Medina appears upset that Flores said more than Medina himself did to the police. I think that this is understandable for someone to be upset about in that position. I disagree that it would be probative of possession in the car. And, again, the subject matter of the conversation is not the same as having a factual antecedent on which to base the inference. Counsel? Oh, go ahead. Go ahead, Justice. Relative to the location of the bag that the police found, where was it located by the police? It was located by the police, shoved under the front passenger seat. And that is where the defendant was sitting, is it not, or behind it? The defendant was in near proximity to the bag, yes. And the bag came in? It was pushed under the front passenger seat from the back seat. That's not established from the record, Your Honor. There was testimony that there was a gear or a motor under the front seat so that it couldn't have been pushed from front to back. But it's not established who actually put the bag under there. Don't you mean pushed from the front? Yes. Pushed from the front to the back. Did I mistake, Your Honor? Your Honor, the person who entered the vehicle from behind the driver, would he or she normally jam or put a bag under the passenger side seat? In other words, if either the person who brought the bag into the car put it under the seat or someone else put it under the seat. Now, in your everyday experiences in life, how many people do you know that get into a car and instead of putting it in front of them under the seat that they're in the back of, put it in the or under the seat of the seat they're not sitting in? Has that ever happened to you? Because frankly, it's never happened to me. Usually when I get in a car, I put the package or whatever, just like on an airplane, I put it in front of me instead of in front of someone else. Well, two points of response to that, Your Honor. First of all, this is not trial evidence. There was testimony from Flores at one of the motion to suppress hearings that the driver of the Durango handed the bag to Trujillo. And I think that's equally as probative as whether the driver of the Durango put it under the car himself, or excuse me, under the seat himself. And second, I think it is equally as reasonable to say that, certainly if you're entering a car that is messy or not yours or you put something somewhere or someone tells you to put something somewhere, and respectfully, I think that if you've ever loaded up a car and it's not easy to put something in a certain spot or it's not exactly, excuse me, what I'm trying to say is I don't think it's as clear cut to say that you're going to put the package just right where you're sitting or in the seat next to you if it's empty. He entered the car, and if the driver of the Durango put the package under the seat, well, that's where he put it. There could have been any number of reasons why he did that. It doesn't have to be that a perfectly innocent person entering their car with a UPS package puts it on the empty seat next to them. Now, the State relies on anger. You had mentioned anger. They also rely on love. And in those cases, it was the situation where they were in a car, the package was in plain view. Are you distinguishing those cases because you're saying that the defendant had no idea what was in the package? Your Honor, can you please repeat the case names for me? Are you distinguishing those cases because you're saying that Mr. Medina had no idea what was in the package? Because those cases are a lot like this case. The defense attorney does not concede that Medina had the inference of knowledge or that the inference of knowledge was met. And we are distinguishing from cases where the courts have said that there was knowledge because this package was brought in to the car after the sun was down, in the dark, in a black plastic bag, and obviously the surveilling did not know what it was. He said it could be money. The car only traveled for maybe 20 minutes. There's no actual direct evidence from which you can draw an inference of knowledge. And so we are distinguishing from those cases. And in many of those cases, there's more conduct. In England, for example, the defendant got out of the car and disobeyed police commands. In Love, for example, the defendant actually physically sat on the contraband for an hour. In Beverly, the police officer saw the defendant trying to hand off the contraband to another person. And here you don't have, and that's another factor of knowledge, incidentally, is were there any gestures or movements. And every officer agreed that Medina just sat there. I'm curious as to why you referenced the police officer's ignorance or lack of knowledge relative to what was in the bag. How is that relevant or material to your client's knowledge of what was in the bag? Well, Your Honor, at the trial, and I would submit an estate's brief respectfully, there was discussion that these officers could identify this as contraband. They knew they were looking for contraband. And I certainly would not say that Agent Kampman, I would not describe that as ignorance. But what I'm saying is that Kampman identified on page 418 of the record that this bag could contain narcotics or money. The reason for this court to take that into consideration is that for the inference of knowledge to be established, there needs to be some sort of visibility. There needs to be looking at the size of this object. And here you have a trained officer who's seen a kilogram of cocaine, he said, several times and been involved in over 100 cases on similar facts. And he doesn't know whether this is narcotics or money. And the reason why this court took that in mind again is because it had been suggested at trial that because the officers said that this was narcotics, perhaps Medina would immediately conclude this is narcotics. And that was the word of the trial court. Anyone who saw a package enter the car this way would immediately conclude it was a narcotic. But Kampman saw the bag enter in that way, and he did not immediately conclude this was narcotics. He said it could be. He saw it could be money. They were the officers during the surveillance were trained officers in narcotics, correct? That was what the record established. Yes. And so he thought it might be money. And, in fact, there was money later recovered from the car, but that was a trial. It was excluded, yes. The $27,000 in the taco bag? Yeah, that was excluded, yes. But those officers made an inference that this was a drug transaction that they were witnessing. That was the testimony. The purpose for surveilling the Durango was because they believed it was possibly engaged in drug transactions. I think that is true. But the point of the inference of knowledge can't just be established by mere presence of the defendant. You have to look at the defendant's acts, the defendant's conduct, the defendant's statement. And here is the driver of the Durango entering the car. Medina is just sitting there. When Medina tells Julio in the phone conversation that you guys F'd up, you F'd up by telling the police a story because it was inconsistent with his story, isn't that an inference? Can't we infer in the trial court, inferred the defendant was in control and knew what was going on? I disagree with that, Your Honor. And, A, Medina actually never refers to it as a story. Only Flores does that. Medina does not call it a story. And, B, there's actually... Wait, hold on a second. When Julio tells them what they told the police, the defendant says, you F'd up, man. You F'd up. Yes. And my point is to say that Medina did not refer to this as a story. And I think that it is perfectly reasonable for a person who was arrested and sitting in jail to be upset and use an expletive. Okay. I don't think that that's probative of possession, and I don't think that's something from which you can draw an inference on. Certainly not the inference the trial court made, which is that this was a statement made in the Malibu before the traffic stop that was a direction about cocaine. That's just pyramidal intervening inferences, Your Honor. Well, he wasn't upset. He told Julio he was just chilling, man. I believe, Your Honor, that he said that in reference at the start of the 28th call when they were just saying hello to each other. But I think if you look at the context, especially the December 21st call, he does get upset, and that is when he learns that floors have been released, Trujillo had gotten a ticket, and you can see on the record, he says, and this is looking at the context of the call, oh, they're probably going to get me then. They're probably going to charge me. And so what was he sitting in jail for? Well, at that time after the arrest, they had, or the police officers had found the contraband. They had taken it to the rural police department, had it tested, and so the criminal complaint was filed on the next day for possession of cocaine. So he had not paid bail at that point, and he was sitting in jail for that purpose. Any other questions? No, thank you. Thank you, sir. You'll have an opportunity to make rebuttals. Thank you, Your Honor. Thank you. Ms. Joseph, you may proceed. Good morning, Your Honors. May it please the Court and Counsel, I am Victoria Joseph, representing the people of the state of Illinois. As Your Honors are well aware, under the Collins Standard, this Court is to review all of the evidence in the light most favorable to the people to determine if a rational trial or fact could find all of the elements beyond a reasonable doubt. Here, the trial court made reasonable inferences from the totality of the circumstances and evidence that led to a rational decision by that court. So are you submitting on the phone conversations solidified actual constructive possession in addition to what happened in the car? All of the evidence together, yes, Your Honor. Both the combined evidence of the package being delivered to the car, finding the package protruding from under the seat in front of the defendant at his feet, his possession of a phone with the address of where that delivery was to be made, as well as multiple phone calls to that same number. But they arrested him and charged him before the phone conversations, correct? They did, Your Honor. So what was the evidence of actual constructive possession prior to the phone conversations? Looking at the fact that he did have, again, the cell phone with the information of the exchange or the delivery of where it met the other vehicle, and looking at the factors established both in Ingram, Love, and this court has continued to use, the inferred knowledge of the size of the contraband protruding from the seat in front of him, the evidence, the fact that the officers testified you could not insert the bag from the front of the seat. So even if the defendant did not himself put it there, he would have seen a sizable package coming and having to move his feet over to put it there. However, the inferences here we make are in the light most favorable to the people, and that is why the people maintain the most favorable inference is that he put that bag there himself. He was the one in the back seat when the package was delivered. Even if it was passed up to the front seat, it still had to come back to the back seat. He made concessions. You said that the defendant made concessions of guilt in that phone call. He made concessions of guilt of something, but how are we to construe that it was a possession, a constructive possession or possession of those drugs, just that phone conversation? In looking at the context of the phone conversation, a defendant appears to concede that the recipient of the, or the person who he's talking to at the time, was Julio Flores, one of two other occupants of the car that was with him when the car was stopped. Julio would have been familiar with the context of the communication, having been part of that stop. The statements discussed in the phone call of what they had told police match the statements that defendant actually gave to police. We can also look at, we can actually look at defendant being upset and frustrated. That is not the only inference that can be made from the calls, but it does support the context here that he is upset of being detained for this particular offense. Also, you have the matchup of the events that happened of his compatriots being released from jail matches what actually happened. So, the court could, from the facts that we do have, it is based on facts and not just inference upon inference. Thank you. Was there any evidence of the size of the bag and the contents to indicate whether or not it could be hidden on any normal person's body? It was described as being shoved tightly under the seat. So, based on the size of most seats, it had to be sizable enough that it would likely be difficult to just conceal in everyday clothing. It wasn't loosely bouncing around in there. It was tightly shoved beneath and protruding out. So, unfortunately, we don't have the exact dimensions. I believe the actual exhibit is still in the circuit court, but it was shown to the judge. The judge would have seen the dimensions of the package. And relative to what we are supposed to interpret, are we supposed to interpret anything? Are we supposed to interpret or analyze what the trial court interpreted and determine whether or not it was against the manifest weight of the evidence? This court is obviously still reviewing all of the evidence that was presented in court and will only reverse the judgment of the court if it is so unreasonable that no rational trier of fact could find him guilty. This court is not to re-weigh factual findings. Again, the only thing the people would point to is, even based on the court's weight, it was giving certain evidence over others. The entire written verdict shows that the court carefully considered each piece of evidence in totality as it continued to refer back to evidence besides the phone calls in reaching its conclusion as to both possession and knowledge. Are there any other questions, Your Honors? None, thank you. No. Thank you. Then we ask, based on the circumstantial evidence in this case, that the people prove both the knowledge of the presence of an illicit substance and actual or constructive possession, and we ask you to affirm the trial court. Thank you. Thank you. Thank you. Mr. Santelli, you may proceed with rebuttal. Thank you, Your Honor. First, as to the Collins standard, even in the light most favorable to the State here, this evidence does not show that there was possession from Medina. The State has put forward that the most reasonable inference is that Medina put the bag under the seat himself just because he's in the back seat. That's not the most reasonable inference here. It is equally as probative that either Trujillo put the bag under the seat, the Durango driver put the bag under the seat. The fact is, is the State is not. The only person to exit the Malibu was the person who got out of the SUV, got into the Malibu, and then got out of the Malibu, right? Yes. So how could Trujillo, the driver, be the person that put the package under, unless he was a magician? Well, Your Honor, you could look at the testimony from Flores at the motions to press hearing, where Flores says that the bag was passed up to Trujillo, and then when the car was stopped, Trujillo leaned back and put the bag under the seat. I think that that is equally as probative as any other inference that can be made, and it's therefore not the most reasonable inference that Medina must put the bag under the seat himself. That wasn't the evidence at trial, though, correct? It was not the evidence at trial, but I think that was something that the trial court heard, and I think that this court could review that testimony and certainly Even though it wasn't from the trial? Not as specific evidence, Your Honor, but I think it simply is just probative of the fact that because Medina was in the back, excuse me, it's probative of saying that just because Medina was in the back seat doesn't mean that he must have put the bag under the car. And keep in mind, as the State said, this was shoved tightly under there. There's no fingerprints on this bag. Let me ask you this. The police asked both Trujillo and Flores if they could look at their cell phones, correct? Yes. They found no evidence on the cell phones that established any connection to the transaction. The only evidence of connection to the transaction was what was on the flip phone, and they denied ownership of the flip phone, right? Yes, that's true. And no officer was able to ever identify who owned that flip phone. That's why I said the police could have sent this phone for testing, literally described sending in the black plastic bag so the officers know how to do this. Do they have to do that? I mean, obviously, we look at all the evidence. The fact that the police didn't do more is not, that's not something we consider. We look at the evidence, the totality of the evidence and determine whether or not there's any evidence in the light most favorable to the state that they proved their case. My two points to that are simply that the phone was extremely probative to the resolution of the case, and that under the specific statute that Medina was charged, the legislature has said that a finding of guilty would require an inmate of 15 years in prison, even if there's no substantial criminal history, like Medina does not have a substantial criminal history. I think the police clearly showed that they could have sent the phone in. They sent in the black plastic bag. I think that's something else that just could have shown and could have settled the issue of possession. And just to briefly conclude, the evidence does not show actual possession. It appeared, from my understanding, the state might be conceding there's no actual possession. The evidence did not support an inference of knowledge. It did not support an inference of control. And this Court should find, defer to the finding of the trial court that the remaining evidence is insufficient to sustain the conviction. The jail phone calls are not a substitute for proof. They're simply inferences that lack a factual antecedent, and this Court should therefore reverse Mr. Medina's conviction. Thank you. Thank you. We will take the case under advisement. If there is another case on the call, we'll take a recess at this time. Please all rise.